```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA    )
                            )
        v.                  )   CRIMINAL NO. 08-10377- JLT
                            )
GERRARD SASSO               )
```

DEFENDANT'S MOTION IN LIMINE

Gerard Sasso moves the Court to exclude the following items of evidence:

(A) testimony that the helicopter Sasso is accused of willfully interfering with was escorting a Liquid Natural Gas Tanker;

(B) Footage taken from the helicopter after the laser was allegedly pointed at the helicopter and the police had arrived at Sasso's apartment; and

(C) Any evidence relating to the discovery by the police in a drawer at Sasso's apartment of folders marked "President of the United States," "NSA information," and "CIA information."

As grounds, it is stated:

The Charges

Sasso is charged in a two-count indictment. The first count charges him with a violation of 18 U.S.C. §32(a)(5), entitled "Destruction of Aircraft or Aircraft Facilities." In relevant part, the statute provides punishment for "[w]hoever willfully ... interferes with or disables, with intent to endanger the

safety of any person or with a reckless disregard for the safety of human life, anyone engaged in the authorized operation of [any] aircraft ...." In the second count, Sasso is charged with making a false statement concerning a matter within the jurisdiction of the executive branch of the federal government for briefly denying he possessed a laser pointer, before tearfully admitting the denial was false.  18 U.S.C. § 1001.

The Factual Context

The government contends that on the night of December 8, 2007, a Massachusetts State Police ("MSP") helicopter was struck by a beam which emanated from a green laser pointer. The testimony is expected to be that the laser beam struck the helicopter approximately seven times over the course of a ten to fifteen minute period.  The MSP helicopter was escorting a Liquid Natural Gas ("LNG") tanker, pursuant to an arrangement with the United States Coast Guard.  The helicopter left this task to investigate the source of the laser beam, and narrowed down the location to a few houses on the Medford line, hovering over them for a period of time.  Subsequently, Medford police officers located the Defendant's apartment, asked to be admitted, and were let in by the Defendant.  They were subsequently joined by Massachusetts State Police troopers.

At least four officers entered the apartment.  The officers are expected to testify the Defendant initially denied

involvement in the incident when asked.  The officers asked the Defendant whether he owned a green laser pointer.  The Defendant denied this, and stated he had a red laser pointer on a key chain.  The officers next drew the Defendant's attention to a laser pointer on a bed stand.  Defendant demonstrated this was a red laser pointer, not a green one.  However, immediately thereafter, the Defendant broke into tears, apologized for lying, and retrieved the green laser pointer from a hiding place, and gave it to them.

In the Defendant's apartment, the police looked in a drawer for lasers. In the drawer, they found folders and discs labeled "President of the United States," "NSA Information," and "CIA Information."

<u>The Applicable Legal Framework</u>

Only relevant evidence may be admissible, i.e., evidence that has a tendency to prove a consequential fact. Fed. R. Evid. 401- 402.  Even such evidence may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid.  403.

<u>LNG Tanker Evidence</u>

The issues for trial on the first count are (1) whether the laser beam actually struck the helicopter, at an estimated distance of between two to three miles from the apartment at the time it was struck; (2) even if it did, whether the Defendant

intentionally directed the laser pointer at it; (3) even if the Defendant did knowingly direct a laser pointer at the distant helicopter, whether he specifically intended to disable or in this case "interfere" with the pilots of the aircraft; and finally, (4) whether such intentional interference constituted "reckless disregard for the safety of human life" under the circumstances.

Reference to the fact that the MSP helicopter was escorting an LNG natural gas tanker at the time it was allegedly struck by the laser beam should not be admitted into evidence, for two reasons.  First, the nature of the task which brought the helicopter over the Mystic River is simply not relevant to any issue of consequence to determination of the action. That the helicopter was escorting an LNG tanker, as opposed to being engaged in some other task, is not relevant to the above issues without some showing that the Defendant had reason to know of the mission.  The Defendant expects to concede he pointed a green laser pointer out the back window of his small apartment on December 8, while smoking cigarettes.  The back window of the Defendant's apartment opens on a view of the houses of nearby neighbors; the Mystic River cannot be seen, is not navigable near the house, and traffic from the river cannot be heard from the house.  The DistriGas terminal is 2.1 miles away from the house as the crow flies, and is not visible.  There is no evidence the

Defendant knew or should have known an LNG shipment was taking place.

Even if found to be relevant to any issue at trial, the fact that the MSP helicopter was escorting an LNG tanker is so marginally relevant, and so potentially prejudicial, that it should be excluded under FRE 403.  The government has asserted in the Complaint in this matter that: "[t]he laser beam also posed an indirect threat to the community because it forced the Troopers flying the escort helicopter to abandon their escort mission, depriving the LNG tanker of critical protection, and heightening its vulnerability to sabotage."  Cmplt. at ¶ 21.  This is precisely the sort of inference that should play no role in the determination of the Defendant's guilt or innocence, and yet is the kind of consideration that may subtly color the jury's analysis of the facts.

As the Supreme Court has explained, "'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.  So, the Committee Notes to Rule 403 explain, '"Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  *Old Chief v. United States*, 519 U.S. 172, 180 (1997)(quoting Advisory Committee's Notes on Fed.

Rule Evid. 403) (internal citation omitted). Here, evidence about the helicopter's mission will only serve to lead the jury astray in its factfinding endeavor. *See United States v. Fulmer*, 108 F.3d 1486, 1497-98 (1st Cir. 1997) (in threat prosecution, reversible error to admit testimony by alleged victim that he feared defendant's threats because of the Oklahoma City bombing).

The government may argue that evidence concerning the LNG tanker is relevant to the jurisdictional element of the false statement count. The most that is relevant, however, is that the helicopter was in flight pursuant to an agreement with the Coast Guard. Evidence of the reason for the agreement with the Coast Guard is not needed in order to determine whether the jurisdictional element has been proved. Alternatively, even evidence of this agreement may be excluded if the Court, based on facts that the defense expects can be submitted by agreement of the parties, determines prior to the trial that the government can prove this element beyond a reasonable doubt. If so, the defense is prepared to stipulate to this element at trial. Given such a stipulation, the evidence is inadmissible on the false statement count as well under Rule 403. *See Old Chief*, *supra*, (evidence of the nature of the defendant's felony conviction should have been excluded in light of defendant's offer to stipulate that he was a convicted felon).

<u>MSP footage</u>

The government is expected to introduce portions of footage taken from the MSP flight. The government provided a DVD to the defense which contains footage from an on-board video camera, and contains audio recordings of the communications between the pilots of the aircraft and other MSP personnel. The footage, however, is not relevant to the case, as it begins, long *after* the laser strike is alleged to have occurred and the Defendant's home was located, and contains images of the Defendant's home, already surrounded by police vehicles, as the helicopter hovered over it.

Even if this evidence is somehow relevant, it should be excluded because it confuses the issues, is misleading, and unfairly prejudicial. Fed. R. Evid. 403; *Old Chief*; *Fulmer*. What is significant in this case is what happened on board during the alleged laser strikes, not afterwards.

<u>Items in the apartment</u>

Evidence concerning the folders and discs labeled "President of the United States," "NSA information," and "CIA information" is irrelevant as it has no bearing on any consequential fact in this case. To the extent that there many be a tenuous inference that possession of such items makes Sasso the kind of person who is more likely to engage in the charged conduct, such an inference is forbidden by Federal Rule of Evidence 404(a) ("Evidence of a person's character or trait of character is not

admissible for the purpose of proving action in conformity therewith on a particular occasion [subject to exceptions inapplicable here]"). In any case, Rule 403 prohibits admission of such evidence because the evidence will serve only to confuse the issues, inflame the jury, and encourage it to reach a verdict on an improper basis.

                                      Respectfully submitted,

                                      Gerard Sasso
                                      by his attorney,

                                      /s/ IAN GOLD

                                      Ian Gold, Esq.
                                      FEDERAL DEFENDER OFFICE
                                      51 Sleeper Street, 5th Floor
                                      Boston, MA 02110
                                      617-223-8061

Dated: January 8, 2010

## **Certificate of Service**

    I, Ian Gold, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 8, 2010.

                                          /s/ IAN GOLD
                                          Ian Gold, Esq.